```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/12/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                           :
MARIO LAPAIX,                                              :
                                      Plaintiffs,          :
                                                           :          13 Civ. 07306 (LGS)
                    -against-                              :
                                                           :          ORDER & OPINION
THE CITY OF NEW YORK, *et al.*,                            :
                                      Defendants.          :
                                                           :
---------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Mario Lapaix brings this employment discrimination action against Defendants

the City of New York, John Castellaneta, Martha K. Hirst, Ilene Lees, and Anthony Crowell. The

Complaint asserts race and national origin discrimination and retaliation claims under the New

York State and New York City Human Rights Laws (the "NYSHRL" and "NYCHRL,"

respectively) and 42 U.S.C. §§ 1981 and 1983. The Complaint also brings claims for

discrimination against members of the military under the Uniformed Services Employment and

Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*, the NYSHRL, New York

Military Law § 242, and New York City Service Law § 88. Defendants move to dismiss all of

the claims in the Complaint except the reemployment claims under USERRA (First Count). For

the reasons stated below, the Defendants' motion is granted in part and denied in part.

**BACKGROUND**

      Plaintiff Lapaix is a black male of Haitian national origin and a resident of New York

City. Plaintiff earned a Bachelor of Arts degree from Marist College in 1977, a Master of Arts

degree from Fordham University in 1997 and a Master of Arts degree in National Security

Strategic Studies from the United States Naval War College in 2002. Plaintiff is a military

veteran and retired Marine Colonel who was on active duty with the Marine Corps from 1977 to

1984 and a reserve member from 1985 to 2012.

At all times relevant to Plaintiff's claims, Defendant Hirst was the Commissioner for Administration and Security for the Department of Citywide Administrative Services ("DCAS"), and she left her employment with the City in 2010. Defendant Castellaneta was Deputy Commissioner for Administration and Security at DCAS and left his employment with the City in 2011. Defendant Lees was General Counsel of DCAS and left her employment with the City in 2011. Defendant Crowell was Counselor to then Mayor Bloomberg and left his employment with the city in 2012.

From 1985 to 2012, Plaintiff was both a full time employee of the City and a Marine Corps Reserve member. Between 1985 and 2001, Plaintiff was promoted by the City seven times, rising to the position of Assistant Commissioner and Senior Executive for Transportation Services at DCAS by 2001. Plaintiff also maintained manager status as an Administrative Staff Analyst. As a Marine Corps Reserve member, Plaintiff was the Detachment Commander for the 4th Civil Affairs Group in 2001. On May 17, 2001, Plaintiff was selected to attend the Naval War College in Newport, Rhode Island, notified his supervisors at DCAS, and was granted a one-year military leave of absence from DCAS.

Upon returning to DCAS in July 2002, Plaintiff met with Defendant Castellaneta to discuss reemployment at his previous position at DCAS. Castellaneta, who had inherited some of Plaintiff's responsibilities, informed Plaintiff that there were no jobs for him at DCAS and that it was Plaintiff's responsibility to secure another job with the City. Plaintiff requested to speak with Defendant Hirst, Castellaneta's superior, but was told by Castellaneta that Hirst refused to speak with Plaintiff and that Hirst directed Castellaneta to inform Plaintiff that no positions existed.

Plaintiff remained on DCAS payroll and searched for another position in the city.  In August of 2002, Plaintiff secured a position as Advisor and Assistant to the Deputy General Manager for Administration at the New York City Housing Authority ("NYCHA"), which was inferior to his position at DCAS as Plaintiff did not have the same management responsibilities and had no control over policy.  Plaintiff was ineligible to receive promotions at NYCHA and DCAS.

In January 2003, Plaintiff, then a Colonel-Select, was mobilized by the Marine Corps to serve as a senior military leader in support of the war in Iraq.  Plaintiff notified his supervisors at the DCAS and the City and was again granted a military leave of absence.  Upon returning to DCAS in October 2003, Plaintiff was again informed by Defendant Castellaneta that there were no jobs for him at DCAS.

In January 2004, Plaintiff spoke with Shameka Boyer, Director of Personnel at DCAS. Boyer told Plaintiff that DCAS could have created an equivalent position to his former position as Assistant Commissioner and Senior Executive for Transportation Services at no additional cost to DCAS.  Still, Plaintiff could not obtain a position at DCAS and returned to work at NYCHA. In March 2004, Plaintiff was mobilized by the Marine Corps to serve as a Special Advisor for a tour in Haiti.  Upon returning to DCAS in September 2004, Plaintiff was informed again by Defendant Castellaneta that there was absolutely no way Plaintiff could work at DCAS.

From May 2006 to June 2007, Plaintiff was again mobilized by the Marine Corps to serve as a Major Subordinate Commander in Iraq, for which he received the U.S. Bronze Star Medal. Upon Plaintiff's return, Plaintiff met with Defendant Castellaneta for the fourth time, and told Castellaneta that he would not return to NYCHA and demanded that Plaintiff be allowed to return to DCAS.  Castellaneta informed Plaintiff that there were no jobs for him at DCAS, but that Plaintiff could have a temporary office in the Municipal Building to conduct his job search.

3

In January 2008, Roger Newman, Commissioner for the Mayor's Office of Veterans' Affairs ("MOVA"), offered Plaintiff employment as MOVA's Senior Military Advisor, which Plaintiff accepted.  The Complaint alleges that Defendant Crowell opposed Plaintiff's joining MOVA because Defendant Castellaneta cast aspersions on him.  Plaintiff remained on DCAS payroll while at MOVA, and was therefore ineligible to receive promotions.

On June 3, 2008, Plaintiff was mobilized once more by the Marine Corps for a special assignment in support of the Iraq War, this time to set up a new Marine Corps Forces in Africa. Plaintiff returned in 2010, and met with Castellaneta for a fifth and final time in an attempt to regain his former position at DCAS.  Plaintiff, however, did not rejoin DCAS and returned to MOVA.  When Plaintiff rejoined MOVA, Commissioner Newman announced his retirement. Newman recommended to Defendant Crowell that Plaintiff become Newman's replacement and successor.   Newman did not hear from Crowell for months and then contacted him.  Crowell told Newman that he would not consider interviewing Plaintiff for the position.

In November, 2010, Edna Wells Handy became Commissioner of DCAS.  Plaintiff sent Commissioner Handy a letter explaining his status and experiences with DCAS.  Thereafter, Commissioner Handy learned from Defendant Castellaneta that Defendant Hirst did not want Plaintiff to work at DCAS.  When Handy contacted Hirst, however, Hirst said that he did not know who Plaintiff was and that Castellaneta was responsible for all decisions regarding Plaintiff's reemployment.  In February 2011, Commissioner Handy allowed Plaintiff to return to DCAS as her Special Advisor until she could find Plaintiff a comparable or better position, but without the promotions that his peers had received over the intervening years.  Two weeks after Plaintiff returned to DCAS, Commissioner Handy informed Defendant Crowell of Plaintiff's new position, for which Defendant Crowell expressed verbal disapproval.

In July 2011, Commissioner Handy announced that Plaintiff would be promoted to the position of Chief External Operations Officer for DCAS.  Shortly after the announcement, however, Plaintiff was involved in an incident with a colleague named Marty Preston, who allegedly grabbed Plaintiff from behind.  Commissioner Handy, at Defendant Crowell's behest, directed her Chief of Staff to investigate the incident.  Plaintiff was forced to undergo psychological and medical evaluations during the investigation.  Preston did not have to undergo such evaluations.  During the investigation, spanning from August to October 2011, Plaintiff was directed to take a paid leave of absence, resulting in a wave of rumors throughout the agency.  Plaintiff was never provided with the findings of the investigation.

The Complaint alleges that white DCAS employees, for example, Julianne Cho, were not subject to evaluations or told to take leaves of absence pending completions of their investigations.  In 2012, Plaintiff was the subject of two more investigations, allegedly as a result of DCAS's failure of leadership in preventing rumors and false allegations against managers.  Specifically, the Complaint alleges that Plaintiff was "singled out" for investigation and falsely accused of misconduct as generalized retaliation from his colleagues.  Plaintiff was demoted at some point in 2012, and took early retirement rather than remain in what he felt was a humiliating position.

The Complaint also alleges that Defendants Castellaneta, Hirst, and Lees had a history of discriminatory and abusive tendencies in the workplace.  The Complaint alleges, for example, that all three were personally involved in discriminating against one DCAS employee because he was a Hispanic military veteran and suffered from a psychological impairment.  The Complaint also alleges that Defendant Crowell had a history of discrimination against "blacks and other minorities."  The Complaint further alleges that Defendant City of New York knew of and

ignored a pattern and practice of unlawful discrimination at DCAS, and further that it failed to train its employees to prevent such discrimination.

## LEGAL STANDARD

On a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 846 (2013). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. While "'detailed factual allegations'" are not necessary, the pleading must be supported by more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News*, 680 F.3d at 182 (alteration in original) (quoting *Twombly*, 550 U.S. at 555). Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted); *see* Fed. R. Civ. P. 8(a)(2).

In *Swierkiewicz v. Sorema N. A.*, the Supreme Court held that the *McDonnell Douglas* burden shifting framework for employment discrimination cases is "an evidentiary standard" to be applied in the summary judgment context, and is "not a pleading requirement." 534 U.S. 506,

510 (2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Although the *Swierkiewicz* Court relied for its holding on the more lenient *Conley* pleading standard that has since been displaced by *Twombly* and *Iqbal*, the *Twombly* Court noted that its holding "does not run counter to *Swierkiewicz*."  550 U.S. at 547.  District courts in this Circuit have continued to cite *Swierkiewicz* for its rejection of the heightened *McDonnell Douglas* standard at the pleading stage.  *See, e.g.*, *Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146, 2014 WL 3388866, *3 (S.D.N.Y. July 11, 2014); *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 401 (S.D.N.Y. 2013); *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010).

## **DISCUSSION**

## **I.  Plaintiff's USERRA and NYSHRL Claims for Military Discrimination**

### **A. First Count – Discrimination under USERRA and the NYSHRL and Reemployment Claims under USERRA**

The First Count of the Complaint is, in fact, two claims -- a claim for discrimination and a reemployment claim under USERRA.  Defendants do not challenge the reemployment claim, to the extent it arises out of events that occurred after October 10, 2004.  *See Goodman v. City of New York*, No. 10 Civ. 5236, 2011 WL 4469513 (S.D.N.Y. Sept. 26, 2011) (holding that claims that were live as of four years before amendments to USERRA are not time barred).  Accordingly, the Complaint is sufficient as to any reemployment claims based on demands for reemployment that occurred after October 10, 2004.

Defendants move to dismiss the USERRA discrimination claim on the ground that the Complaint fails to allege facts that could lead to an inference of discriminatory animus and fails to allege adverse actions that were taken against Plaintiff.  Because the sufficiency of the reemployment claim is not challenged, and because the Complaint alleges facts sufficient to state a discrimination claim under USERRA, the motion to dismiss the First Count is denied.

An employer engages in a prohibited act under USERRA "if the person's membership . . .

in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership." 38 U.S.C. § 4311(c)(1). "Military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Woodard v. N.Y. Health & Hosps. Corp.*, 554 F. Supp. 2d 329, 348 (E.D.N.Y. 2008) (internal quotation marks omitted), *aff'd in part and remanded in part*, 350 F. App'x 586 (2d Cir. 2009). "Discriminatory motivation may be proven through direct or circumstantial evidence, including . . . an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." *Id.* at 348-49 (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009 (Fed. Cir. 2001)).

Here, the Complaint alleges that Plaintiff was treated differently than other employees because of his military status; that Plaintiff was forced to undergo psychological evaluations that other employees at DCAS did not when facing similar workplace investigations; that Plaintiff was forced to take a leave of absence during investigations unlike similarly situated non-military employees; and that Plaintiff's return from redeployment and poor treatment were close in time. *See Sheehan*, 240 F.3d at 1014 (holding that discriminatory intent under the USERRA may be inferred from "proximity in time between the employee's military activity and the adverse employment action . . ."). These facts, taken together, are sufficient to state a claim that Plaintiff's military status was a motivating factor in adverse employment actions taken against Plaintiff.

To the extent Defendants move to dismiss the Fifth Count -- military status discrimination in violation of the NYSHRL -- they appear to move on the same grounds as discussed in their USERRA arguments. Accordingly, that claim survives.

### B. Second Count – Retaliation Claim under USERRA

The Second Count alleges a claim for retaliation pursuant to USERRA.  Defendants move to dismiss for the same reasons stated in regard to the First Count.  Because the Complaint alleges that Plaintiff engaged in a protected activity and faced adverse employment actions for the protected activity, the motion to dismiss is denied.

In order to make out a prima facie case of retaliation under USERRA, "a plaintiff must show that (1) he was engaged in protected activity; (2) that the employer was aware of that activity; (3) that the plaintiff suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action."  *Fink v. City of New York*, 129 F. Supp. 2d 511, 527 (E.D.N.Y. 2001) (applying prima facie framework in a retaliation claim brought under USERRA); *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (stating the retaliation standard in employment cases); *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005) (same).  The Complaint alleges that Plaintiff repeatedly asked to be reinstated to his former position at DCAS, and that he wrote to the Commissioner of DCAS to complain about the failure to reinstate him.  The Complaint further alleges that Plaintiff's career was harmed by his employer's failure to put him back in the position he left when he was deployed, and that as a result of his complaints to Commissioner Handy, he was subjected to unwarranted investigations.  Accordingly, the Complaint sufficiently alleges that Plaintiff was engaged in a protected activity, that the employer knew of the activity, that he suffered adverse employment actions, and that there was a causal connection between the activity and the action.   Therefore, Defendants' motion to dismiss the retaliation claim under USERRA is denied.

## II.  Third, Fourth, Seventh & Eighth Counts -- Discrimination and Retaliation under §§ 1981 and 1983 and the NYSHRL

### A.  Discrimination

The Third Count asserts a claim for race and national origin discrimination under 42

U.S.C. §§ 1981 and 1983.  The Seventh Count asserts a claim for race and national original

discrimination under the NYSHRL.  Defendants move to dismiss both claims for failure to state a

claim.  The Complaint sufficiently alleges claims for race and national original discrimination,

and the motion is denied.

The standard for a claim of race and national origin discrimination under §§ 1981 and

1983 is substantially the same for claims brought under the NYSHRL.  *See Schiano v. Quality

Payroll Sys., Inc.,* 445 F.3d 597, 609 (2d Cir. 2006) ("Hostile work environment and retaliation

claims under the NYSHRL are generally governed by the same standards as federal claims under

Title VII."); *Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004) (noting that most of

the standards which apply to Title VII claims apply to § 1981 and § 1983 claims).  A complaint

need not establish a prima facie case of employment discrimination to survive a motion to

dismiss; however, the claim must be facially plausible, and must give fair notice to the defendants

of the basis for the claim.  *Sletten,* 2014 WL 3388866, at *3; *Thai*, 726 F. Supp. at 329.

The requisite inference of discrimination can be based on allegations, or at a later stage

proof, of an employer's "invidious comments about others in the employee's protected group,"

"sequence[s] of events leading to the plaintiff's discharge," or "timing of the discharge," for

example.  *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).  "[B]ecause the

facts inevitably vary in different employment discrimination cases, both the Supreme Court and

this Court have explained that the . . . proof required in a given case will depend on the specific

facts in question."  *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (internal

quotation marks omitted) (holding that the plaintiff established a prima facie case of employment

discrimination when the plaintiff was white, female, and qualified for a position, and when she

proffered evidence showing that the defendant offered her a "different and less desirable

severance package" than to the plaintiff's black male colleague who like the plaintiff had an

executive position).

The Complaint adequately alleges that Plaintiff belonged to a protected class as he is black and of Haitian national origin and that he was qualified for the position at DCAS. *See Brutus v. Silverseal Corp.*, 06 Civ. 15298, 2009 WL 4277077, at *7 (S.D.N.Y. Nov. 24, 2009), *aff'd*, 439 F. App'x 28 (2d Cir. 2011) (black and Haitian male a member of protected class). The Complaint also adequately alleges that Plaintiff suffered from adverse employment actions, including demotions and burdensome investigations. It further alleges that the Plaintiff was treated less well than a comparable employee, Julianne Cho, who allegedly is Caucasian. The Complaint also alleges with sufficient particularity that Defendants treated another nonwhite and non-American employee less well because of his race and national origin. These allegations are sufficient to plead a claim for race and national origin discrimination.

Defendants' arguments that the Complaint fails to allege sufficient facts from which a discriminatory motive may be inferred are mostly factual arguments that are not ripe at this stage. For example, Defendants argue that the Hispanic employee referenced in the Complaint did not suffer from racial and national animus, referencing the complaint in another action. However, that employee might have suffered from discrimination not alleged in his complaint. Defendants also argue that the inference of discrimination is weak given the racial composition of other members of DCAS, and Mr. Newman's replacement at MOVA, who was black. While relevant to a factual determination of discrimination, such facts are for a jury and are not relevant on this motion.

Defendants also argue that their alleged actions that took place before the three-year statute of limitations period must be barred for the relevant claims. To the extent that the Complaint alleges facts prior to the statutory period, the claims will be treated as background allegations, as Plaintiff admits they should be. Defendants further argue that Defendant Hirst

should be dismissed because the claims against her are barred by the applicable statute of limitations, but some allegations relate to her actions in November 2010, within three years of the filing of this action.  Accordingly, the claims against Defendant Hirst are not dismissed.

### B. Retaliation

The Fourth Count alleges a claim for retaliation under § 1983.  The Eighth Count alleges a claim for retaliation under the NYSHRL.  Defendants move to dismiss for failure to state a claim. The motion is granted because the Complaint fails to allege any protected activity with respect to his race or national origin.

To state a claim for retaliation under § 1983 and the NYSHRL (like a claim for retaliation under USERRA discussed above), a complaint must allege that: a plaintiff engaged in a protected activity; the employer was aware of this activity; the employer took adverse employment action against him; and a causal connection exists between the alleged adverse action and the protected activity.  *Hicks*, 593 F.3d at 164.  The Complaint does not allege that Plaintiff engaged in any protected activity with respect to his race or national origin.  The nonconclusory allegations regarding protected activity relate only to Plaintiff's military service.  Accordingly, the claims for retaliation under the § 1983 and the NYSHRL in the Fourth and Eighth Counts are dismissed.[1]

Plaintiff argues that the Complaint does allege protected activity, a letter he sent to Commissioner Handy.  The letter, however, "regarding [Plaintiff]'s status with DCAS and

---

[1] Plaintiff's § 1983 claim for retaliation is dismissed for additional reasons.  Retaliation claims under § 1983 are commonly brought as First Amendment free speech claims, but are not actionable as Fourteenth Amendment equal protection claims.  *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1995) (citing *Ratliff v. DeKalb Cnty.*, 62 F.3d 338, 340–41 (11th Cir. 1995); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989)). The Complaint does not specify the federal right violated by the alleged retaliation. To the extent the claim is based on the Fourteenth Amendment, it is dismissed for failure to state a claim.  To the extent it is based on the First Amendment, it too fails, as there are no allegations that the subject of Plaintiff's complaints were a matter of public concern.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188-89 (2d Cir. 2008) (dismissing First Amendment retaliation claim because plaintiff's speech was not on a matter of public concern).

explaining the discriminatory hurdles that had been placed by Castellaneta and Hirst[,]"refers to Plaintiff's issues with reemployment.  Accordingly, Plaintiff does not assert a retaliation claim with respect to his race or national origin.

## III. Third and Fourth Counts Against the City of New York

All claims appear to be asserted against all Defendants, including allegations in the Third and Fourth Counts that the City of New York is liable under § 1983 for the constitutional violations of its employees pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). The City moves to dismiss the *Monell* claims.  The Complaint fails to plead a municipal policy or custom for which the City may be held liable.  The City's motion to dismiss the Third and Fourth Counts against the City accordingly is granted.

While a city may not be sued under § 1983 "for an injury inflicted solely by its employees or agents," it can be liable if the infliction on a plaintiff of a constitutional injury was the result of a municipal "policy or custom."  *Monell*, 436 U.S. at 694.  A city "policy or custom" exists "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice' . . . ." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

A city's failure to train or supervise constitutes "deliberate indifference" when three requirements are met: (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks omitted) (quoting *Walker v. City of New*

*York*, 974 F.2d 293, 297–98 (2d Cir. 1992)).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011) (internal quotation marks omitted).

The Complaint alleges one other specific instance of discrimination against a similarly situated employee.  The Complaint also alleges that the City was aware of other claims and complaints filed against senior officials, including Defendants, who maintained a pattern of discrimination.  These allegations are insufficient to plead a *Monell* claim based on a theory that it was almost certain that issues of discrimination could arise, that there was a history of employees in the same unit mishandling the situation, and that the wrong choice by employees would result in a deprivation of constitutional rights. *See Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (holding that two incidents from separate units were insufficient to state a failure to train claim).

Plaintiff argues that at this it is unlikely that "a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage," and therefore a Plaintiff "need only plead that the city's failure to train caused the constitutional violation." *Amnesty Am*, 361 F.3d at 130 n.10.  While true, a Plaintiff cannot base a claim for a pattern of constitutional violations on one other incident and general allegations regarding discriminatory motivation.  Accordingly, the Third and Fourth Counts are dismissed as to the City.

## IV.  Fifth and Eighth Counts -- Discrimination and Retaliation claims under the NYCHRL

The Complaint alleges racial and national original discrimination and retaliation under the NYCHRL.  Because Plaintiff has stated a discrimination claim against Defendants under the more stringent NYSHRL, the Plaintiff also sufficiently alleges a claim under the NYCHRL.  All that is required to state a claim for discrimination under the NYCHRL for a plaintiff is to

14

demonstrate "by a preponderance of the evidence that [he] has been treated less well than other employees because of" his race of national origin. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *Nelson v. HSBC Bank USA*, 929 N.Y.S.2d 259, 264 (App. Div. 2011). For the same reasons that the Complaint sufficiently stated a claim under the NYSHRL, it has done so here.

For a retaliation claim under the NYCHRL, a plaintiff must show that: (1) he "took an action opposing [his] employer's unlawful discrimination," and (2) "as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112. Plaintiff does not allege any such action opposing his employer's unlawful discrimination on the basis of race or national origin and does not allege any action by his employer reasonably likely to deter somebody from engaging in such an action. Accordingly, Plaintiff's NYCHRL retaliation claims are dismissed.

## V.  Ninth and Tenth Counts – Military Discrimination

The Complaint alleges violations of New York Military Law § 242 and New York Civil Service Law § 88. Defendants move to dismiss those claims as untimely because Plaintiff failed to challenge the violations of those statutes through an Article 78 proceeding, which is the procedural vehicle to seek review of an administrative action in New York State, *see* N.Y. C.P.L.R. § 7801 *et seq.* (McKinney 2014). To be considered timely, an Article 78 proceeding must be commenced within four months of a final and binding decision of an agency. N.Y. C.P.L.R. § 217 (McKinney 2014). Because Article 78 does not apply, the motion to dismiss these claims as untimely is denied.

Article 78 proceedings are used to challenge the administrative decisions of governmental bodies in New York. *See* N.Y. C.P.L.R. § 7803 (McKinney 2014). A claim for Article 78 relief necessarily turns on "whether the challenged determination was made in violation of lawful

procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion." *Goodstein Const. Corp. v. Gliedman*, 502 N.Y.S.2d 136, 140 (App. Div.1986) (internal quotation marks omitted), *aff'd*, 509 N.E.2d 350 (N.Y. 1987).  Where a party brings claims for contractual damages or violations of the NYSHRL against state or city agencies, rather than challenges to final administrative determinations, courts have held that those claims are better decided in the courts rather than through an Article 78 proceeding.  *See Goldman v. White Plains Ctr. for Nursing Care, LLC*, 801 N.Y.S.2d 508, 512 (Sup. Ct. 2005) ("[The plaintiff] has stated colorable claims against [the defendant] for breach of contract and age discrimination which are more appropriately litigated in a plenary action."); *accord Abiele Contracting, Inc. v. New York City School Constr. Auth.*, 689 N.E.2d 864, 866-67 (N.Y. 1997).  Because Plaintiff is seeking monetary relief for violations of the New York Military Law and Civil Services Law, and is not challenging an administrative determination, these claims are properly brought as legal claims, and are not subject to Article 78's four-month statute of limitations.  The motion to dismiss the Ninth and Tenth Counts is denied.

## CONCLUSION

For the reasons stated above, Defendants' motion is GRANTED in part as follows: Counts Four and Eight, which allege retaliation under §§ 1981 and 1983, the NYSHRL and the NYCHRL are dismissed.  Counts Three and Four are dismissed only as asserted against the City of New York.  The motion is denied in all other respects.

Dated: August 12, 2014
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**